**STATE of Tennessee, Appellee,**

v.

**Steven Leif DIES, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 3, 1991.

---

1. Tenn.R.Civ.P. 54.04(2).

Comer L. Donnell, Public Defender, Jerry Hunt, (at trial), Lebanon, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Albert L. Partee, III, Asst. Atty. Gen., Nashville, Tom P. Thompson, Dist. Atty. Gen., John Wooten and Connie Massey, Asst. Dist. Attys. Gen., Hartsville, for appellee.

## OPINION

PEAY, Judge.

The defendant was convicted on three counts of aggravated sexual battery. For these convictions he received a sentence of eight years on each count as a Range I standard offender. Two of these sentences were set to run concurrently with each other but consecutively to the third sentence, resulting in an effective sentence of sixteen years.

The defendant has presented seven issues for review in this appeal as of right. In the first issue he contends that the evidence was insufficient to support a conviction. In his second issue he complains that the trial court erred in denying his severance motion. In his third issue he complains that the trial judge erred in denying his motion for a change of venue. In his fourth and fifth issues he contends that the trial judge erred by allowing certain hearsay statements into evidence which did not qualify as fresh complaints. In his sixth and seventh issues he contends that the sentences were excessive in view of his belief that the trial judge failed to make the findings required by law. After consideration of the record in this cause, we find merit to the defendant's complaints and reverse the trial court.

The defendant was charged with the sexual abuse of his nine-year-old stepdaughter in two counts of the indictment and with the sexual abuse of an eight-year-old victim in the third count. The facts necessary for a review of the defendant's issues were established by the State's witnesses. According to this testimony one of the victims, E.S.,[1] spent the night on December 9, 1987, with the other victim, D.P. Present in the home, in addition to D.P., were her mother and her stepfather, the defendant in this cause. On the following morning while riding the school bus, E.S. told D.P. that after she (E.S.) had gone to sleep, the defendant had picked her up and carried her to the living room. He had then placed her on the floor and had begun kissing on her forehead and "playing around" with her middle section. After school both victims went to a neighbor's house and told this neighbor what had occurred on the previous evening. In addition, D.P. told of

1. Consistent with court policy, because the victims are minors, they will not be referred to by name.

a prior act toward her by the defendant. This neighbor notified both victims' mothers, and each victim related her story to her respective mother, evidently in the presence of the neighbor. A police officer was then summoned, and the victims told their stories to the officer who transported them to the police station where they talked with a Department of Human Services representative. After making these statements, the girls were taken for a physical examination by a medical doctor.

Both victims testified at trial, and their testimony was followed by that of the aforementioned neighbor, E.S.'s mother, two Department of Human Services workers, and the medical doctor who had examined the victims. Each of these witnesses related various statements made by one or both victims concerning the defendant's acts. In the case of D.P., the statements were made at least three to four months after the alleged acts while in the case of E.S., the statements were made over a period from one to five days immediately following the alleged event. In addition, the doctor who had examined both victims testified that E.S. had had redness around her genital area that would have been caused by some type of genital manipulation. The doctor also testified that when she had attempted a genital examination, D.P. became very upset making it impossible to complete the examination.

In presenting his side of the case, the defendant testified that he and D.P's mother were divorced in the early part of 1987 and that he had not moved back into the home until after the summer of 1987. For this reason he contended that he could not have abused D.P. during that summer as she claimed. While he had been living in the home on December 10, 1987, and expressly remembered E.S.'s visit, he testified that at that time he had suffered from a severe toothache, had been taking medication, and had remained asleep on the couch throughout the period of her visit. He unequivocally denied any improper conduct such as was alleged by E.S.

Having outlined the proof, we now address the defendant's first issue, in which he challenges the sufficiency of the evidence as to each conviction. Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973).

A defendant challenging the sufficiency of the evidence has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). From a review of the evidence considered by the jury, we find that the defendant has failed to carry his burden.

In his second issue the defendant challenges the trial court's refusal to grant a severance in this case. The allegations contained in counts one and two relate to D.P., while count three relates to E.S. It is the defendant's contention that he was unfairly prejudiced by having to face the charges in one trial of all three counts when count three involved a separate allegation of sexual abuse towards a separate victim. Prior to trial the defendant properly filed his motion for a severance. At the time this motion was argued, it was denied by the trial judge who found: "If for no other reason besides the economics of the case, that this is a case that should be tried together and would be more or less a mandatory joinder type case". The State's position in this matter is that the decision on

whether to grant or deny a severance is left to the discretion of the trial court which will only be reversed for an abuse of this discretion. The State further contends that the three counts of aggravated sexual battery were properly tried together in spite of the fact that they involved two separate victims because the acts were part of a common scheme or plan.

Our rules of criminal procedure provide that the defendant shall have a right to a severance of offenses alleged in separate counts of an indictment if they are joined pursuant to Rule 8(b) unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others. Tenn. R.Crim.P. 14(b)(1). On this issue our Supreme Court has held that the primary inquiry into the question of if a severance should be granted is whether the evidence of one crime would be admissible in the trial of the other. *State v. Burchfield,* 664 S.W.2d 284, 286 (Tenn.1984). In *Burchfield* at least ten years separated the first two sexual acts from the third. The court held that a severance should have been granted since the evidence of one offense was not admissible at the trial of the other because of the remoteness in time of the offenses, the weakness of the argument of common scheme or plan, and the inherent prejudice to the defendant, i.e., a design by the prosecution to show propensity to commit the offense. Our courts have consistently held that evidence of other crimes is irrelevant and inadmissible except to prove motive, intent, identity, absence of mistake or accident, or existence of a continuing plan, scheme or conspiracy of which the crime on trial is a part. *Bunch v. State,* 605 S.W.2d 227, 229 (Tenn.1980).

After reviewing the record in this cause, we agree with the defendant that a severance should have been granted. Although there are similarities in that both victims were near the same age, they were not both residing in the house; the acts occurred at least four months apart; and, the alleged sexual acts were not particularly similar. One victim related that the defendant had rubbed her "private parts" and on another occasion had "licked her panties".

The other victim testified that the defendant "started kissing [her] on [her] forehead and playing with [her] middle section". We do not agree that this constituted a common scheme or plan nor that the economics of the case prohibit a severance. On the contrary, we believe to try these counts together was highly prejudicial to the defendant as the purpose of the joinder was intended to show the defendant's propensity to commit the offenses.

■■■ In his fourth and fifth issues the defendant complains that the trial court erred in allowing into evidence certain hearsay statements made by the victims to various witnesses. Caselaw on this matter indicates that a sex abuse victim's hearsay statements to third parties are admissible if uttered soon after the commission of the offense. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523, 528 (1963). Evidence of a fresh complaint is not admitted as an exception to the hearsay rule but rather as a legitimate means of bolstering the victim's credibility in sex-related offenses. *Dietzel v. State,* 132 Tenn. 47, 71–73, 177 S.W. 47, 53 (1915); *State v. Jerrell C. Livingston,* No. 01–C–01–9012–CR–00337, Davidson County, 1991 WL 181058 (Tenn.Crim.App. filed September 17, 1991, at Nashville). When evidence of a fresh complaint is admitted, it must be accompanied by an instruction limiting it to the victim's credibility as a witness. *State v. Don Van Voltenberg,* No. 89–224–III, Maury County, 1991 WL 63682 (Tenn.Crim.App. filed April 26, 1991, at Nashville).

In the case under review the defendant failed to request a limiting instruction from the trial court concerning the fresh complaint testimony and, therefore, has waived this issue. *Pennington v. State,* 573 S.W.2d 755 (Tenn.Crim.App.1978);

However, we have reviewed the transcript of the witnesses in this case, and frankly, we find that the testimony is somewhat meager on the issue of whether or not the statements made by the victims were fresh complaints. As stated above, evidence of fresh complaints is admissible if made soon after the reported event oc-

curred. If there is a delay in reporting the event, the statements may still be admissible if the delay is satisfactorily explained, and if the statements are not elicited by others. In determining excusable delay, factors such as the reason for and the reasonableness of the delay, the age and mental capacity of the victim, and the strength and nature of any threats toward the victim are all important considerations. *State v. Lewis,* 803 S.W.2d 260, 264 (Tenn. Crim.App.1990).[2]

From the record before this Court, we are unable to determine if all the victims' statements related by the witnesses qualify as fresh complaints. This is especially true as to the issue of excusable delay; thus, this determination will have to be made by the trial court on remand.

■ In his final two issues the defendant complains that the sentences were excessive and that the trial court failed to make the findings required by law. As the defendant was sentenced after the effective date of the Sentencing Reform Act of 1989, we must conduct a *de novo* review with a presumption of correctness. T.C.A. §§ 40–35–401(d), –402(d).

The portion of the Sentencing Reform Act of 1989 codified at T.C.A. § 40–35–210 established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and,

(6) Any statement the defendant wishes to make in his own behalf about sentencing.

In addition, it provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The Act further provides that "whenever the court imposes a sentence, it *shall place on the record* either orally or in writing, what enhancement or mitigating factors it found,[3] if any, as well as findings of fact as required by § 40–35–209" (emphasis added). That section requires that the record of the sentencing hearing include specific findings of fact upon which application of the sentencing principles was based.

From the above it is clear that the Sentencing Reform Act of 1989 requires the trial judge to place in the record, either orally or in writing, the enhancement and mitigating factors, or the absence of such factors, along with specific findings of fact upon which the principles of sentencing are based. These findings by the trial judge must be in the record for an adequate review on appeal and are required by the statute. The legislative purpose for this procedure is clearly expressed in the comments of the Sentencing Commission.

At the conclusion of the sentencing hearing, the trial judge found as follows:

After reviewing the presentence report, listening to the testimony here today, and having the benefit of having tried this case on two occasions, the Court would have to agree that this case is what I would say on the mild side of

---

**2.** For a comprehensive and scholarly discussion of the history of the law on fresh complaints see *State v. Livingston,* No. 01–C–01–9012–CR–00337, Davidson County, 1991 WL 181058 (Tenn.Crim.App. filed September 17, 1991, at Nashville).

**3.** Because of the importance of enhancing and mitigating factors under the new sentencing guidelines, the presence or absence of these factors must be noted on the record. T.C.A. § 40–35–210 comment.

severity insofar as the charges are concerned of aggravated sexual battery.

The Court feels after the testimony of Mrs. Carpenter, and Mr. Thompson, and the other gentleman, Mr. Price, that testified, that this defendant is a good worker, and might have some possibilities of rehabilitation. At least he's got some redeeming qualities, as the Attorney General put it.

The range of punishment is from five to twelve years in each count of the indictment. The Court, after considering all the possibilities, sentences the defendant to a term of eight years on each count in the State Penitentiary, with counts one and two being concurrent, and count three being consecutive to two counts, one and two, for a total of sixteen years. The Court justifies its ruling of consecutive sentences based on the fact that the defendant does have prior felony convictions, he was on probation at the time that this act was committed. The Court considers the age of the victims, that there was more than one victim involved, that the victims were particularly vulnerable because of their age, and that this act was done for the personal gratification of the defendant.

That will be the ruling of the court, a term of sixteen years as a range one standard offender.

The above quoted findings of the trial judge do not, in our opinion, satisfy the statutory sentencing requirements. It is unclear if the trial judge considered the existence of multiple victims, their ages, and their vulnerability, and the acts being done for the defendant's personal gratification as enhancing factors or as justification for consecutive sentencing. Some of these findings are inherent in the crimes alleged and would not be proper enhancing factors. In addition, the presentence report indicates only one prior felony conviction as an adult, yet the trial court found "prior felony convictions". Had the convictions withstood the defendant's challenges, resen-

tencing under the appropriate guidelines would have still been necessary.

For the reasons herein stated, we reverse the convictions and remand this case for retrial. We further direct that count three be severed from counts one and two. Upon retrial the trial judge will be required to determine whether statements made by the victims to witnesses are admissible as fresh complaints. If the defendant is again convicted of these offenses or any offense charged, he shall be sentenced in accordance with the provisions of this opinion and T.C.A. § 40–35–101, et seq.

SUMMERS, J., concurs with separate opinion.

RILEY, Special Judge, concurs.

SUMMERS, Judge, concurring.

I agree with the analysis of my learned colleague, Judge Peay; and I would reverse and grant the defendant a new trial. I must admit, however, that it pains me to do so. A new trial will mean that these issues will have to be tried for the third time, because the first trial resulted in a hung jury. This is a strain to the victims, the defendant, the lawyers, and our system of criminal justice. Having to try a case for the third time presents a troublesome situation, and this problem is exacerbated when dealing with young children who are victims. Nonetheless, I cannot find that the facts of this case constitute a common scheme or plan or that the economics of the case prohibit a severance. Economics should not take priority over fairness and sensible disposition of criminal cases, particularly when young victims are involved.

Notwithstanding my personal feelings for the victims, I concur.