IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1996 SESSION

FILED

May 19, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9508-CR-00223 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable Arthur T. Bennett, Judge |
| | ) | |
| MAURICE GARNER, | ) | (Second degree murder) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

A. C. Wharton, Jr.
District Public Defender
  and
Ronald S. Johnson
Assistant Public Defender
201 Poplar Avenue
Memphis, TN 38103
(AT TRIAL)

A. C. Wharton, Jr.
District Public Defender
201 Poplar Avenue
Memphis, TN 38103
  and
W. Mark Ward
Assistant Public Defender
147 Jefferson Avenue
Memphis, TN 38103
(ON APPEAL)

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
  and
Clinton J. Morgan
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

John W. Pierotti, Jr.
District Attorney General
  and
Thomas D. Henderson
Assistant District Attorney General
201 Poplar Ave.
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Maurice Garner, appeals as of right from a jury conviction in the Shelby County Criminal Court for second degree murder, a Class A felony. He was sentenced as a Range I, standard offender to twenty years in the custody of the Department of Correction. On appeal, he contends that the evidence is insufficient to support his conviction and that the sentence imposed is excessive. We disagree and affirm the trial court's judgment of conviction.

During the early morning hours on September 14, 1993, Jimmy Redmond, the victim, was found dead in an alley between a set of apartment buildings. He died as a result of three gun shot wounds.

Tony Pegues testified that he knew both the defendant and the victim. He said that he grew up in the same neighborhood as the defendant. He also stated that he knew the victim as "Bear." Pegues stated that on September 14, 1993, he was talking to the defendant and two other friends in an alley behind some apartment buildings near 785 Polk Street. He said that after the defendant left, the victim walked up to them. According to Pegues, the defendant fired a few shots at the victim as the victim started to walk away. He testified that the defendant fired a few more shots at the victim, who had been shot, as the victim started running back towards them. He stated that the victim then fell to the ground. Pegues recalled hearing the defendant say something about wanting to get the victim before he fired the weapon. He also acknowledged giving a written statement to the police shortly after the shooting in which he told the police that he heard the defendant say "I told you I was going to kill you" before shooting the victim. Pegues testified that he knew that the defendant had a gun with him when they were talking but that he did not see the victim carrying a weapon.

2

On cross-examination, Pegues testified that he did not hear any words exchanged between the defendant and the victim before the shooting occurred.

Officer R. G. Moore of the Memphis Police Department testified that he responded to a call at approximately 1:30 a.m. on September 14, 1993. He prepared a diagram of the scene. The diagram reflects that the victim was found near an apartment lying on the ground. It shows a trail of blood from one side of the parking lot to the other side where the victim lay. Officer Moore said that blood surrounded the victim. He also stated that the victim had eight dollars and some change. He testified that he also found a beeper, a busted crack pipe and a cigarette lighter on the victim.

Obrian Cleary Smith, a forensic pathologist, conducted the autopsy of the victim. Dr. Smith testified that a drug test revealed that the victim had a relatively high concentration of cocaine in his blood. He stated that the victim suffered a total of three gunshot wounds, one to the left lower back, one to the right side of the face, and one to the right side of the chest. Dr. Smith said that one of the bullets penetrated the victim's heart and windpipe and another went through the hip bone and the small intestine. According to Dr. Smith, the victim also had abrasions and lacerations to his left eyebrow and cheekbone. In Dr. Smith's opinion, the victim died as a result of multiple gunshot wounds which caused him to bleed to death.

Sergeant Charles Logan of the Memphis Police Department testified that on September 15, 1993, the defendant voluntarily came to the sheriff's department to turn himself in for a homicide. Sergeant Logan stated that the defendant told him that he shot and killed the victim because the victim would not give him cocaine or his money back after he paid the victim twenty dollars for the drugs. According to Sergeant Logan, the defendant further stated that the victim laughed when he asked for his money back. He said that the defendant told him that he then took his pistol and fired

3

several shots at the victim. Sergeant Logan said that he placed the defendant in custody and did not question the defendant further because the defendant said that he was tired and wanted to get some sleep. He also testified that on September 16, 1993, the defendant gave a written statement regarding the shooting of the victim.

The defendant's written statement reflects that he told Sergeant Logan that he shot someone whom he knew as "Bear" at approximately 12:00 a.m. on September 14, 1993. In the statement, the defendant admitted shooting at the victim more than once with a .38 revolver. The defendant explained that he was behind the buildings at 785 Polk Street smoking crack by himself when he saw the victim. The statement reflects that the defendant claimed that he had previously given the victim money in exchange for drugs but that the victim did not give him either the drugs or his money back. The defendant told Sergeant Logan that he had asked the victim to give him the drugs or return his money on earlier occasions but each time the victim would laugh and tell him to get out of his face before he killed him. The statement shows that on the night of the shooting, the defendant walked up to the victim and asked him for the drugs or his money and that the victim started laughing before he shot the victim. The defendant told Sergeant Logan that he did not remember anything after hearing the victim laugh other than running away and that he did not recall what he did with the gun. He also denied carrying the pistol in anticipation of seeing the victim. The defendant stated that he did not recall seeing any other men standing around him.

At trial, the defendant testified that he had smoked crack cocaine for years and that he was near Walnut Street on September 14, 1993, smoking crack cocaine which he had purchased in the area. He stated that he had been using the drug all day for approximately three or four days. The defendant said that he did not have a job and usually purchased cocaine by recommending customers to his dealers. The defendant recalled meeting Pegues near a store on Walnut Street and walking

4

behind an apartment building. The defendant said that Pegues was selling drugs to people behind the apartment building. The defendant testified that he had previously purchased drugs from Pegues and that on the night of the shooting, Pegues gave him fifty cents to beep someone to pick up a package. According to the defendant, after he made the call for Pegues, he walked to the other end of the apartments and started smoking crack cocaine.

The defendant testified that he gave the victim twenty dollars in exchange for cocaine two weeks earlier but the victim would not give him any drugs nor would he give him his money back. The defendant said that when he asked for the drugs or money, the victim told him to get away from his car because he did not have anything for him. He stated that the victim, who had a gun, also threatened to shoot him. According to the defendant, he saw the victim at least three or four more times before the night of the shooting and that each time he asked the victim to return his money or give him the cocaine, the victim would refuse, cuss him and then drive away in his car.

The defendant said that on the night of the shooting while he was smoking crack cocaine in the alley, he saw the victim walking up the sidewalk towards him. He stated that he asked the victim once again to give him his money or drugs. The defendant testified that the victim cussed him and told him to get out of his face before he shot him. The defendant said that he saw the victim reach behind his back. The defendant asserted that because he was scared, high on cocaine and thought the victim was reaching for a gun to shoot him, he took his own pistol and shot the victim. According to the defendant, he fired the weapon at least twice before walking to the other side of the street and running away. He said that after being shot, the victim went to the opposite end of the building. He testified that he must have thrown the gun away as he ran. The defendant said that he had seen the victim with a gun two times earlier and that on one of these occasions, the victim was in the same location. The

5

defendant also testified that he had been shot in the leg once before when he was in the area.

The defendant stated that once he heard that the police were looking for him, he went to the police station. Regarding the defendant's statements to the police, he claimed that he continued to use cocaine after the shooting and was high when he went to the police station. He stated that he told the officers he was tired and needed some rest. The defendant also acknowledged that his written statement to the police does not mention that he saw the victim reaching for something behind his back but explained that he told the officers but it was not included in the statement. At trial, the defendant admitted that he did not actually see the victim with a gun. The defendant also claimed that he had never shot a gun before that night.

Diane Danish, a friend of the defendant, testified that she lived in an apartment located near where the shooting occurred. She said that while she was in her apartment on September 14, 1993, she heard two men arguing outside her apartment. She stated that when she walked outside on her porch, she saw the defendant and the victim arguing. Danish recalled seeing the victim reach behind his back with his right hand and then hearing gun shots being fired. She testified that she ducked down to avoid being shot and that she saw the victim falling down in the alley but did not see the defendant when she raised up. According to Danish she heard approximately five or six shots fired. Danish conceded that she did not actually see the shooting and that she did not know who had the gun.

Reginald Garner, the defendant's brother and a friend of Danish, testified that he observed the shooting while standing on the back porch with Danish. He stated that he saw the victim in the alley with Pegues and some other men. He said that the victim had purchased drugs from Pegues and was walking away when the defendant

6

walked up to the victim. Garner testified that the defendant and the victim talked and that he was startled when the victim said something real loudly. Garner recalled seeing the victim step back and moving his right hand behind his back. According to Garner, he saw the defendant fire the initial shot at the victim before he lay down on the floor to keep from getting shot. He testified that he heard a total of approximately three or four shots fired. He testified that when he looked up, the defendant and the victim were going in separate directions.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant argues that there is insufficient evidence to establish his guilt for second degree murder beyond a reasonable doubt. He asserts that the proof shows that he acted in self-defense. The state contends that the jury was entitled to reject the defendant's theory of self-defense. We agree.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Second degree murder requires proof that the defendant committed an unlawful, knowing killing. T.C.A. §§ 39-13-201(a) and -210(a)(1). Regarding the unlawful nature of the killing, the defendant contends that the evidence is insufficient because the proof showed that he acted in self-defense. The defendant argues that his fear of the victim and his conduct was reasonable because the victim was a drug dealer

7

who had threatened him on other occasions, the confrontation occurred in an area where drugs were sold, and the victim was reaching behind his back. A person is justified in using force against another person when he or she reasonably believes (1) that death or serious bodily injury is imminent and (2) that the force used is immediately necessary to protect against the other person's use or attempted use of unlawful force. T.C.A. § 39-11-611(a). The state has the burden of negating any defense raised by the supporting evidence beyond a reasonable doubt. T.C.A. § 39-11-201(a)(3).

In the light most favorable to the state, the proof established that during the early morning hours of September 14, 1993, the defendant had been smoking crack cocaine in an alley when the victim approached. The defendant then shot the unarmed victim. The evidence showed that while the victim may have threatened the defendant on earlier occasions, he posed no threat to the defendant at the time of the shooting. In fact, the defendant's statement to the police reflects that the defendant shot the victim after he walked up to the victim and asked him for either his drugs or his twenty dollars and the victim laughed at him. The evidence viewed favorably to the state shows that the defendant did not mention to the police that he shot the victim out of fear that the victim was reaching for a gun behind his back to shoot him. Moreover, Pegues stated that the defendant said "I told you I was going to kill you" before shooting the victim. Although the defendant testified that he fired the shots out of fear, the evidence supports the jury's rejection of the defendant's self-defense claim under these circumstances. We conclude that ample proof existed to allow a rational trier of fact to conclude that the defendant unlawfully and intentionally killed the victim without any justification that would either provide a defense of self-defense or lower the offense to voluntary manslaughter.

## II. SENTENCING

Next, the defendant argues that the sentence imposed by the trial court is excessive. He argues that proper consideration of the applicable enhancement and mitigating factors requires a reduction of his sentence. The state contends that the record supports a sentence of incarceration for twenty years. We agree that a twenty-year sentence is appropriate in this case.

At the sentencing hearing, no witnesses testified. The presentence report reflects that the thirty-three-year-old defendant has an eighth grade education. It shows that the defendant worked as a picture framer for approximately two and one-half months in 1991 before being fired from the position and resigned from a position with the City of Memphis Sanitation on the same day that he started. The defendant admitted being previously addicted to cocaine and alcohol, but he declined to make a statement regarding his present addiction to drugs. The defendant described his physical condition as poor and complained of shortness of breath, severe chest pains, loss of eyesight and a neck rash. The presentence report also reflects that the defendant has a prior criminal history consisting of four misdemeanor convictions committed in 1983, 1984 and 1985, including resisting arrest, disorderly conduct, and assault and battery. At the conclusion of the hearing, the trial court sentenced the defendant to twenty years, emphasizing that the punishment should be extreme because the defendant killed the victim over a drug deal. The trial court held that a term of incarceration of twenty years was appropriate based upon the facts and circumstances of the case and was necessary to avoid depreciating the seriousness of the offense.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the

burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210 (1990); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-

210(c) (1990).[1]  Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors.  T.C.A. § 40-35-210(d) and (e) (1990).  The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  T.C.A. § 40-35-210 (1990), Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

Initially, the defendant contends that our review on appeal should be de novo without a presumption of correctness because the trial court did not follow the sentencing principles and failed to place on the record its findings regarding applicable enhancement and mitigating factors as required by T.C.A. § 40-35-210(f) (1990).  We agree that the trial court essentially failed to follow the statutorily required sentencing procedures, particularly relative to factual findings for and application of enhancing and mitigating factors.  Normally, this would result in a remand for resentencing.  State v. Dies, 829 S.W.2d 706, 711 (Tenn. Crim. App. 1991); State v. Clifton, 880 S.W.2d 737, 745 (Tenn. Crim. App. 1994).  However, the existence of the relevant factors is so obvious from the record that we opt to assess the appropriate sentence on appeal.

The state argues that the evidence supports application of factor (1).  See T.C.A. § 40-35-114(1).  The defendant asserts that his sentence should not be enhanced based on his prior criminal history consisting of convictions for four misdemeanor offenses committed no later than 1985.  See T.C.A. § 40-35-114(1).  We disagree.  The fact that the crimes occurred several years ago relates to the weight that should be given to the factor, not its applicability.  Moreover, the defendant candidly admitted using drugs for several years.  The unlawful use of drugs qualifies as prior

---

[1]For Class A felonies committed on or after July 1, 1995, the presumptive sentence is the midpoint of the range.  See T.C.A. § 40-35-210(c) (Supp. 1996).

11

criminal behavior under T.C.A. § 49-35-114(1). See State v. Butler, 900 S.W.2d 305, 312 (Tenn. Crim. App. 1994).

The defendant concedes that enhancement factor (9), possession or use of a firearm during the commission of the offense, is applicable in this case. See T.C.A. § 40-35-114(9); State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). He argues, though, that it should not be given great weight in murder cases. He contends that because a death is involved, the legislature has factored ample enhancement into the punishment ranges. He cites no authority for his contentions.

Pursuant to T.C.A. § 40-35-114, a sentence may be increased based upon the enhancement factors established by the proof as long as the factor is appropriate for the offense and is not an essential element of the offense. State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994). Moreover, the Sentencing Commission Comments note that the weight to be given to applicable enhancement and mitigating factors is not set forth in the statute but rather is a matter of judicial discretion. T.C.A. § 40-35-210 (1990), Sentencing Commission Comments; see State v. Shelton, 854 S.W.2d at 123.

We hold that the use of a firearm is not an element of second degree murder and applies as an enhancement factor in this case. Moreover, we determine that considerable weight should be given to the defendant's use of a firearm, given the circumstances surrounding its use.

The state contends that enhancement factor (10), no hesitation about committing a crime when the risk to human life is high, also applies. See T.C.A. § 40-35-114(10). The state argues that the factor is applicable because other people were present in the alley and were placed in danger of being injured when the defendant

12

fired his weapon at the victim. The defendant asserts that factor (10) is inherent in the offense of second degree murder. We disagree.

Normally, factor (10) does not apply in homicide cases. See State v. Butler, 900 S.W.2d at 314. Our court has concluded that this factor should not be applied when the offense inherently involves the risk and the victim is the only one within the risk. Id. However, factor (10) may be properly used to enhance a sentence for such an offense when other people present are within the risk of death caused by the defendant. See State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995).

In this case, several witnesses testified that others were present when the defendant shot at the victim. In fact, Danish and Garner were standing nearby on the porch of Danish's apartment when the shooting occurred. Both stated that they had to duck in order to avoid being shot. Also, the defendant fired some of the shots at the victim as the victim was running back towards Pegues and his friends. Therefore, we hold that factor (10) applies under the facts of this case.

With respect to mitigation, the defendant argues that the evidence supports application of mitigating factor (2), acting under strong provocation. See T.C.A. § 40-35-113(2). The defendant testified that the victim cursed him and threatened to kill him on more than one occasion. He claimed that he shot the victim because he believed the victim was reaching behind his back for a gun. However, we note that the jury rejected the defendant's theory of self-defense under the evidence presented. We hold that the factor should be given little if any weight.

In our de novo review, we determine that the applicable enhancement factors are entitled to much greater weight than the single mitigating factor supported by

13

the record.  Under the circumstances of this case, we conclude that a sentence of twenty years in the Department of Correction is appropriate.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____Joseph M. Tipton, Judge

CONCUR:

_____
Paul G. Summers, Judge

_____
Jerry L. Smith, Judge