# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER SESSION, 1996

FILED

June 6, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,     )
                              )    No. 02C01-9511-CC-00349

      Appellee       )

                              )    MCNAIRY COUNTY

vs.                       )

                              )    Hon. Jon Kerry Blackwood, Judge

RANDLE DAVIS,         )

                              )    (Delivery of a Schedule II

      Appellant     )    Controlled Substance)

---

For the Appellant:

**THOMAS T. WOODALL**
203 Murrell Street
Dickson, TN 37056-1075

(ON APPEAL ONLY


**GARY F. ANTRICAN**
District Public Defender
P. O. Box 700
Somerville, TN 38068

(AT TRIAL AND OF COUNSEL
ON APPEAL)

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**ROBIN L. HARRIS**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


**ELIZABETH T. RICE**
District Attorney General

**ED NEAL McDANIEL**
Asst. District Attorney General
300 Industrial Drive
Selmer, TN 38375

OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

**OPINION**

The appellant, Randle Davis, was convicted by a McNairy County jury of delivery of a Schedule II controlled substance, a class C felony. Tenn. Code Ann. § 39-17-417 (a)(2) and (c)(2) (1993 Supp.). The trial court sentenced the appellant as a standard, range I offender to forty months incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence underlying his conviction, asserts that his sentence is excessive, and contends that the trial court erred in denying him an alternative sentence.

### 1. Factual Background

The appellant's case proceeded to trial on June 26, 1995. At trial, the State presented the testimony of Kevin Crawford, an officer with the Somerville Police Department and an agent with the Twenty-Fifth Judicial Drug Task Force. On December 6, 1993, at approximately 7:30 p.m., Officer Crawford, accompanied by an informant named Para Wilkerson, visited a residence reportedly belonging to a Taurus Davis, also known as "Wee Wee." Crawford drove his car onto the driveway and observed someone standing on the porch. After determining that Wee Wee was not at home, Crawford informed the man on the porch that he wanted to buy crack cocaine and gave him one hundred dollars. The man entered the residence and returned with seven "rocks" of crack cocaine. After the transaction was completed, Crawford departed.

At trial, Crawford identified the appellant as the individual from whom he had bought the crack cocaine. Crawford had never seen the appellant prior to the evening of the offense. However, on that evening he was able to clearly see the appellant. Crawford testified that, although it was dark at the time of the offense, his headlights were on and directed at the porch. The appellant was

2

also standing underneath two porch lights.  Crawford testified that the porch light alone was sufficient "that, you know, [the appellant] could see ... what the value of the money I was holding in my hand was, and I could see what I had got in return in my hand, without having to use additional lighting."  Moreover, the appellant approached Crawford's car on three separate occasions: first, in order to obtain the money; second, in order to deliver the drugs; and, third, in order to discuss with Crawford the possibility of future transactions.  On these occasions, the appellant leaned into the passenger window.  He was a distance of three feet or less from the officer.  Finally, Crawford testified that, during their encounter, he looked at the appellant carefully for the purpose of subsequent identification.

On cross-examination, Crawford stated that he returned to the residence several times following the drug transaction, but did not again encounter the appellant.  Two or three months following the instant offense, Crawford identified the appellant from an array of twenty or twenty-five photographs.  The photographs had been selected on the basis of Crawford's description of the person who had sold the drugs to him:

> I had purchased drugs from a male black, approximately early 20's --- years of age; would be approximately six-foot to six-foot-two; average color, not heavy, but medium build.

According to the standard procedure of the drug task force, Crawford submitted the appellant's case to the District Attorney's Office in July or August, 1994.  The McNairy County Grand Jury returned an indictment in January, 1995.

Crawford next encountered the appellant the week prior to trial, as Crawford was exiting a courtroom.  He testified at trial that, on this occasion, he immediately recognized the appellant.  On the morning of the trial, defense counsel presented Crawford with an array of nine photographs.  Crawford again

3

identified the appellant. Crawford asserted at trial that there existed no doubt in his mind that the appellant was the individual who sold him the crack cocaine.[1]

The appellant testified at trial. He stated that Taurus Davis, or "Wee Wee," is his first cousin. He could not recall whether or not he visited his cousin on the date of the offense. He testified that, at the time of the offense, he was working with the Cornelius Lumber Company and frequently visited his cousin on weekends. He denied selling or delivering cocaine on the date of the offense and denied having seen Officer Crawford before the day of the trial. He admitted that he was aware that cocaine was being sold from his cousin's residence.

On July 14, 1995, the trial court conducted a sentencing hearing. The State relied upon the proof adduced at trial and the pre-sentence report. The appellant testified on his own behalf. The appellant stated that he was twenty-two years old and had completed the tenth grade in high school. In 1991 or 1992, he participated in the "Knoxville Job Corps" and received training in building maintenance. At the time of the sentencing hearing, he was employed at Venco Furniture Company. He had been employed at the furniture company since two weeks prior to trial in the instant case. The appellant is married and has two children. He testified that his family was staying with his wife's family in Greenville, South Carolina, until he had resolved his various criminal cases. He was living with his mother. He testified that he contributed fifty dollars per week toward the support of his children and also occasionally assisted his mother in paying bills.

He admitted that, in the past, he had associated with people who used or sold drugs, including his cousin. He denied ever using drugs and asserted that

---

[1]Crawford conceded during cross-examination that, during the week prior to trial, following his encounter with the appellant in the courthouse, he looked briefly at the photograph that he had selected from the photographic lineup two or three months following the offense. He again looked at the photograph on the morning of the trial.

he was attempting to detach himself from acquaintances involved in drug-related activity. He admitted that in early 1994, he was convicted of misdemeanor possession of cocaine and misdemeanor possession of marijuana. He also admitted to prior convictions for driving under the influence of an intoxicant and a weapons offense. The appellant continued to deny any involvement in the instant offense.

On cross-examination, the appellant testified that he had not yet fully paid court costs and fines imposed pursuant to his convictions for cocaine and marijuana possession.[2] He confessed that his employment history is sporadic, as are his financial contributions to his wife and children.

The appellant's mother testified. She confirmed that the appellant had obtained employment and that he assisted her in paying household bills. She also testified that he tried to support his family. She observed that, recently, the appellant was remaining at home more often and appeared to have "learned his lesson."

In sentencing the appellant to three years and four months incarceration, the trial court found the aggravating factor that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114 (1993 Supp.).[3]

---

[2]On redirect examination, he testified that, while he was employed, he was attempting to pay the court costs and fines.

[3]The pre-sentence report reflects that, in addition to the instant offense, the appellant's criminal record includes the following:
(1)    On July 10, 1992, the appellant was arrested and convicted of driving with a revoked license, for which the appellant received a partially suspended sentence of six months;
(2)    on June 28, 1993, the appellant was arrested for a weapons offense and, on July 1, 1993, was convicted of the offense, for which he was fined and required to forfeit the weapon;
(3)    On July 1, 1993, the appellant was arrested and convicted of driving under the influence of an intoxicant, for which he received a partially suspended sentence of eleven months and twenty-nine days;
(4)    On January 6, 1994, the appellant was arrested for possession of

5

The court concluded that this factor outweighed the mitigating factor that the appellant's conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113 (1990). In denying an alternative sentence, the trial court further concluded that the appellant's criminal record, the seriousness of the offense, and deterrence outweighed the presumption of an alternative sentence. See Tenn. Code Ann. § 40-35-102(6) (1990) and §40-35-103(1)(A), (B) (1990). In its Sentencing Order, the trial court additionally considered the appellant's "lack of steady and continuous employment" and the past failure of measures less restrictive than confinement. See Tenn. Code Ann. § 40-35-103(1)(C), (5).

## 2. Analysis

**a.    Sufficiency of the Evidence**

The appellant first challenges the sufficiency of the evidence supporting the verdict. A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant must establish that the evidence presented at trial was so deficient that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

---

marijuana and, on September 23, 1994, was convicted of the offense, for which he received a partially suspended sentence of eleven months and twenty-nine days;

(5)    On January 13, 1994, the appellant was arrested for possession of cocaine and, on September 23, 1994, was convicted of the offense, for which he received a partially suspended sentence of eleven months and twenty-nine days, concurrent with the sentence for possession of marijuana;

(6)    On September 15, 1994, the appellant was arrested and convicted of driving under the influence of an intoxicant, for which the appellant received a partially suspended sentence of eleven months and twenty-nine days.

An appellate court may neither reweigh nor reevaluate the evidence when determining its sufficiency.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts.  State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).  "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory."  State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).  The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  Id.  See also State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992).

The appellant essentially argues that Officer Crawford's identification of the appellant did not establish the appellant's guilt beyond a reasonable doubt.  However, "[i]t is well established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof.  State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).  See also State v. Williams, No. 01C01-9505-CR-00146 (Tenn. Crim. App. at Jackson, November 12, 1996); State v. Rollins, No. 03C01-9308-CR-00250 (Tenn. Crim. App. at Knoxville), perm. to appeal denied, (Tenn. 1995).  Moreover, this court has held that the identification testimony of a victim is, by itself, sufficient to support a conviction.  Id.  We conclude that the evidence adduced at trial is sufficient.

**b.    Sentencing**

**I. The Length of the Sentence**

The appellant contends that his offense does not warrant a sentence of three years and four months incarceration in the Department of Correction.  Review, by this court, of the length or manner of service of a sentence is *de novo*

with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption only applies, however, if the record demonstrates that the trial court properly considered sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court applies inappropriate factors or otherwise fails to comply with the 1989 Sentencing Act, the presumption of correctness falls. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). For the reason set forth later in this opinion, the presumption of correctness does not accompany the sentence imposed.

In any event, the appellant bears the burden of establishing that the sentence imposed by the trial court is erroneous. State v. Lee, No. 03C01-9308-CR-00275 (Tenn. Crim. App. at Knoxville, April 4, 1995). In determining whether the appellant has met this burden, this court must consider the factors listed in Tenn. Code Ann. § 40-35-210(b)(1990) and the sentencing principles described in Tenn. Code Ann. § 40-35-102 and § 40-35-103.

Moreover, with respect to the length of a sentence, Tenn. Code Ann. § 40-35-210 provides that the minimum sentence within the appropriate range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. Id. If there are no mitigating factors, the court may set the sentence above the minimum in that range, but still within the range. Id. See also State v. Dies, 829 S.W.2d 706, 710 (Tenn. Crim. App. 1991). "[T]here is no particular value assigned by the 1989 Sentencing Act to the various factors and the 'weight afforded mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the

8

circumstances of the case involved.'" State v. Marshall, 870 S.W.2d 532, 541 (Tenn. Crim. App. 1993)(citation omitted).

As noted earlier, in determining the length of the appellant's sentence, the trial court considered the appellant's criminal history and also the absence of any serious bodily injury or the threat thereof. The appellant contends that the trial court should have applied mitigating factor (6), concerning the appellant's youth, and mitigating factor (11), that the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. Tenn. Code Ann. § 40-35-113.

First, with respect to the appellant's youth, Tenn. Code Ann. § 40-35-113(6), the record reflects that the appellant was twenty-one at the time of the instant offense. The appellant does not explain how his age affected his judgment nor is there any evidence in the record indicating that the appellant was unable to appreciate the nature of his conduct. See, e.g., State v. Winston, No. 01C01-9302-CR-00069 (Tenn. Crim. App. at Nashville), perm. to appeal denied, (Tenn. 1994)(citing State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993), for the proposition that a defendant's youth should be considered in the context of the defendant's education, maturity, experience, mental capacity or development, and any other pertinent circumstances tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct). Second, the record is absolutely void of any evidence indicating that the appellant acted under "unusual circumstances." Tenn. Code Ann. § 40-35-113(11). Although Officer Crawford did not encounter the appellant during his subsequent visits to Wee Wee's residence, the appellant himself admitted that he frequently visited his cousin and was aware that his cousin was conducting drug transactions at his residence. We conclude that the record supports the trial court's imposition of a sentence four months greater than the minimum sentence.

## II. The Denial of an Alternative Sentence

The appellant also contests the trial court's denial of probation or community corrections. Tenn. Code Ann. § 40-35-303 (1993 Supp.); Tenn. Code Ann. § 40-36-106 (1993 Supp.). Both probation and community corrections are non-incarcerative alternative sentences. See Tenn. Code Ann. § 40-35-104 (c) (Supp. 1993). Therefore, we must initially ascertain whether the trial court properly excluded the appellant from any form of alternative sentencing.

In reviewing a trial court's denial of an alternative sentence, we must determine whether the appellant is entitled to the statutory presumption that he is a favorable candidate for alternative sentencing. State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995)(citing State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993)). The appellant in this case is a standard offender convicted of a class C felony and, therefore, is entitled to the presumption. Tenn. Code Ann. § 40-35-102(5) and (6). This determination alone does not end our inquiry. The presumption can be successfully rebutted by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source provided it is admissible as evidence and made part of the record. State v. Jernigan, 929 S.W.2d 391, 395-396 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1996).

Tenn. Code Ann. § 40-35-103 provides:

(1) Sentences involving confinement should be based on the following considerations:
    (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
    (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Bingham, 910 S.W.2d at 454 (citing Ashby, 823 S.W.2d at 169).  A court may also apply the mitigating and enhancing factors set forth in Tenn. Code Ann. § 40-35-113 and -114, as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5).  Finally, the potential or lack of potential for rehabilitation of a defendant should be considered in determining whether he should be granted an alternative sentence.  Tenn. Code Ann. § 40-35-103(5).

Initially, we note that the trial court considered deterrence in sentencing the appellant.  Tenn. Code Ann. § 40-35-103(1)(B).  Generally, before a trial court can deny alternative sentencing on the basis of deterrence alone, evidence in the record must support a need within the jurisdiction to deter individuals other than the appellant from committing similar crimes.  Bingham, 910 S.W.2d at 455 (citing Ashby, 823 S.W.2d at 170); Bonestel, 871 S.W.2d at 169; State v. Byrd, 861 S.W.2d 377, 380 (Tenn. Crim. App. 1993); State v. Jones, No. 03C01-9302-CR-00057 (Tenn. Crim. App. at Knoxville, November 22, 1994), perm. to appeal denied, (Tenn. 1995).  A finding that the appellant's sentence will have a deterrent effect cannot be merely conclusory.  Id.  Moreover, recently, in State v. Kirby, No. 03C01-9505-CR-00130 (Tenn. Crim. App. at Knoxville, November 18, 1996), although this court noted "a general acknowledgment of a widespread and serious problem with drugs which must be deterred," the court also noted that "the General Assembly has not seen fit to declare drug offenders as a group unfit for probation," or other alternative sentences.  In any event, Officer Crawford testified at trial that, over a period of two or two and one half years, he was officially involved in fifty or sixty drug cases in five counties, including McNairy County.  He was unofficially involved in other cases.  During a six month period, in McNairy County alone, he orchestrated approximately twenty drug "buys."  Finally, the appellant himself acknowledged that drug related activity was

11

probably occurring at his cousin's residence. Accordingly, the record supports the consideration of deterrence.

However, we note that the seriousness of the offense would not alone support the trial court's denial of an alternative sentence. Tenn. Code Ann. § 40-35-103(1)(B).

> In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement.

Bingham, 910 S.W.2d at 454 (citing State v. Hartley, 818 S.W.2d 370, 374-375 (Tenn. Crim. App. 1991)). The record reflects that the appellant sold seven rocks of crack cocaine, amounting to three tenths of a gram of crack cocaine. The circumstances of this offense simply do not satisfy the applicable standard.

Nevertheless, we conclude that the appellant's criminal history supports the trial court's denial of an alternative sentence. Although the appellant's criminal record includes only misdemeanors, this court has held that there is no prohibition against considering misdemeanor offenses to enhance a sentence. See, e.g., State v. Dean, No. 03C01-9508-CC-00251 (Tenn. Crim. App. at Knoxville, January 10, 1997); State v. Dixon, No. 01C01-9402-CC-00052 (Tenn. Crim. App. at Nashville, September 20, 1995); State v. Meeks, No. 02C01-9405-CC-00101 (Tenn. Crim. App. at Jackson, June 21, 1995), perm. to appeal denied, (Tenn. 1996). Additionally, with respect to those offenses occurring after the instant offense but before the sentencing hearing, this court has held:

> [T]rial judges can consider criminal convictions or any other criminal behavior which occurred prior to the sentencing hearing as constituting a previous history of criminal convictions or criminal behavior, regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration.

12

State v. Poole, No. 02C01-9506-CC-00178 (Tenn. Crim. App. at Jackson, January 31, 1996)(citing State v. Waters, No. 01C01-9106- CR-00158 (Tenn. Crim. App. at Nashville, February 20, 1992).  The appellant proffers no reason why this court should decline to consider the past failure of partially suspended sentences to deter the appellant from criminal conduct.  Finally, we agree that the appellant's sporadic employment history also weighs against an alternative sentence.  See, e.g., State v. Hughes, No. 01C01-9502-CC-00033 (Tenn. Crim. App. at Nashville), perm. to appeal denied, (Tenn. 1996).

Therefore, we affirm the appellant's conviction and the sentence imposed by the trial court.

_____
DAVID G. HAYES, Judge

CONCUR:


_____
JOHN H. PEAY, Judge


_____
PAUL G. SUMMERS, Judge