# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 14, 2000 Session

## STATE OF TENNESSEE v. LARRY WILKINS

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-599-149      Donald P. Harris, Judge**

---

### No. M2000-01225-CCA-R3-CD - Filed June 22, 2001

---

The appellant, Larry Wilkins, pled guilty in the Williamson County Circuit Court to two counts of the class D felony of causing a computer system to be accessed for the purpose of obtaining $1,000 or more for himself or another by means of false or fraudulent pretenses, representations, or promises.[1]  For these offenses, the trial court imposed concurrent sentences of three years incarceration in the Tennessee Department of Correction, suspending all but one year of the appellant's sentences and placing him on supervised probation for four years.  Additionally, the trial court imposed fines amounting to $1,500[2] and ordered restitution amounting to $4,500.  The appellant now appeals the trial court's sentencing determinations.  Specifically, notwithstanding the trial court's imposition of alternative sentences of split confinement, the appellant contends that the trial court should have granted him either total probation or placement in a community corrections program.  Following a review of the record and the parties' briefs, we affirm in part and reverse in part the judgments of the trial court, and we remand this case to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part, Reversed in Part, and Remanded.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Michael H. Sneed, Nashville, Tennessee; and C. Diane Crosier, Franklin, Tennessee, for the appellant, Larry Wilkins.

---

[1] The combined judgments in this case refer to this offense as "Theft Over $1000 Using Computer."

[2] The combined judgments suggest that the trial court imposed a fine of $1,500 for each offense to which the appellant pled guilty.  However, the video cassette recording of the sentencing hearing clearly indicates that the trial court imposed a fine of $750 for each offense, resulting in a total amount of $1,500 in fines.  "Where there is a conflict between a judgment form and the transcript of the proceedings, the transcript controls."  State v. Charles A. Dailey, No. M1999-01075-CCA-R3-CD, 2000 WL 775585, *3 (Tenn. Crim. App. at Nashville, June 16, 2000)(citing State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991), and State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985)).

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Ronald L. Davis, District Attorney General; Lee Dryer, Assistant District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On May 10, 1999, a Williamson County Grand Jury indicted the appellant for two counts of the class D felony of causing a computer system to be accessed for the purpose of obtaining $1,000 or more for himself or another by means of false or fraudulent pretenses, representations, or promises.  The indictment stemmed from the appellant's acquisition on October 27, 1998, of two computer codes authorizing access to expense accounts maintained by his employer, ComData Corporation, and the appellant's communication of those codes to an accomplice who thereby withdrew $2,000 from one account and $2,500 from another.  The appellant pled guilty to the charged offenses on December 20, 1999.  The appellant's pleas were unaccompanied by any agreement concerning sentencing other than the State's concession that the appellant was a Range I standard offender.  Accordingly, the trial court conducted a sentencing hearing on February 11, 2000.

At the sentencing hearing, the State submitted to the trial court a pre-sentence report, which indicates that the appellant was approximately twenty-five years old at the time of these offenses and did not possess a previous history of criminal convictions or criminal behavior.  The report additionally reflects that the appellant graduated from Tennessee State University in 1998 with a bachelor of science degree in psychology.  Following his graduation, the appellant was employed at ComData Corporation.  Additionally, following his discharge by ComData until September 24, 1999, the appellant was employed by Cigna Medicare as a customer service representative earning $1,900 per month.  Subsequently, from September 27, 1999, until the time of the sentencing hearing, the appellant was employed by Sprint PCS as an "analyst" earning $2,500 per month.  At the time of the sentencing hearing, the appellant was unmarried but had one nine-year-old son who was living with the child's mother.[3]  According to the pre-sentence report, "[t]he [appellant] no longer pays child support but does provide financial support and have regular contact with the child."

The State also presented the testimony of John Hasselbacher, the Vice-President for Corporate Security and Criminal Investigations at ComData Corporation.  Hasselbacher testified that, at the time of these offenses, the appellant was employed by ComData in its "operations area," providing services to customers through the telephone.  Hasselbacher explained that ComData maintains expense accounts for trucking companies, enabling the companies to wire money to truck drivers traveling across the country.  Hasselbacher elaborated that, if a trucking company needs to wire money to a driver, the company can telephone ComData, provide a security password to a ComData employee, and request a code authorizing the disbursement of the desired amount of

---

[3]At the sentencing hearing, the appellant indicated that his son was eight years old and suggested that the child was currently in the care of the appellant's mother.

money.  The ComData employee will then access the company's expense account via a computer, obtain an authorization code, and communicate the code to the trucking company.  This authorization code can be affixed to a blank "draft" or check and cashed at any check cashing business.

According to Hasselbacher, ComData began investigating the instant offenses when it received several complaints from customers concerning unauthorized withdrawals from their expense accounts.  The investigation, including interviews with the appellant, revealed that the appellant had obtained customers' security passwords and communicated them to an accomplice during the months of September and October 1998.  The accomplice then called ComData Corporation and obtained computer codes authorizing the disbursement of funds from the customers' expense accounts.  Moreover, on October 27, 1998, the appellant himself acquired two authorization codes via a co-worker's computer terminal and communicated these codes to an accomplice.  In all, the codes acquired by the appellant's accomplice or accomplices authorized the disbursement of $29,600 from ten different expense accounts.  Hasselbacher testified that eight different individuals participated in cashing the drafts or checks to which the codes were affixed.  The company was able to stop payment of all but $16,600.  To Hasselbacher's certain knowledge, the appellant was the sole ComData employee involved in the criminal enterprise.  Hasselbacher asserted that, therefore, the enterprise could not have been accomplished without the appellant's participation.

Hasselbacher acknowledged that, upon ComData's discovery of the criminal enterprise, the appellant did provide information to the company's investigators concerning his accomplice or accomplices.  However, the appellant subsequently retracted some information and also neglected to attend appointments with investigators.[4]  Finally, Hasselbacher testified that, at the time of the sentencing hearing, the appellant had not yet attempted to make restitution for his offenses.

The appellant testified on his own behalf at the sentencing hearing.  He largely confirmed the accuracy of information contained in the pre-sentence report, adding that he intended to return to school in August in order to obtain a master's degree in "organizational management" and was currently attempting to establish his own business.  As to the instant offenses, the appellant

---

[4]We note that the pre-sentence report likewise indicates:

> The investigating officer instructed the subject the day he entered the conditional guilty pleas in the instant case (12/20/99) to complete the personal questionnaire and statement and then make an appointment for an interview at the Franklin Probation and Parole Office.  The subject failed to call as instructed and the investigating officer called the subject and set up an appointment for 1/31/00 at 10:00 AM.  The subject failed to appear for the appointment and did not call to reschedule or offer an explanation.

> *The subject faxed the completed personal questionna[i]re and statement along with numerous requested documents on 2/7/00.  The subject reported that he was in a car accident and was unable to make his appointment.  An amended report was filed on 2/10/00.

explained that they were the result of poor judgment and peer pressure. Moreover, the appellant noted that he did not benefit monetarily from his commission of the offenses. He also claimed that, contrary to Hasselbacher's testimony, he fully cooperated in the investigation of his offenses.

The appellant denied any responsibility for distributing security information other than the two computer codes that authorized the disbursement of funds amounting to $4,500 and resulted in his guilty pleas. However, the appellant subsequently conceded that an accomplice, Sean Carter, removed "notes" from the appellant's home that apparently contained additional security passwords or authorization codes. The appellant also conceded that Carter thereby obtained additional funds from expense accounts maintained by ComData and shared those funds with the appellant.

The appellant asserted his willingness and ability to pay restitution for the offenses to which he pled guilty. Specifically, the appellant testified that he could pay $4,500 in installments. Moreover, he noted that, if necessary, he could borrow or otherwise acquire the full amount of restitution in one lump sum. The appellant conceded that he had made no attempt to make restitution prior to the sentencing hearing but explained that he had believed it necessary to act through the court. He further conceded that his bank account contained only $222 and observed that it was "hard" to save money.

During the appellant's testimony, the trial court interjected inquiries concerning the appellant's employment since his commission of the instant offenses, noting the appellant's representation by the district public defender. In particular, the trial court inquired concerning the appellant's employment at the time he requested appointment of the district public defender. The appellant responded that he was employed by Cigna Medicare. Moreover, the appellant testified that his salary was $1,600 per month during his entire tenure at Cigna Medicare. Upon further questioning by the court, the appellant acknowledged that he had reported a salary of $1,300 per month on the Affidavit of Indigency that he submitted to the court on May 28, 1999. The appellant also acknowledged that he never reported to the court his subsequent employment by Sprint PCS and his consequent increase in salary.

At the conclusion of the sentencing hearing, the trial court imposed concurrent sentences of three years incarceration in the Tennessee Department of Correction, suspending all but one year of the appellant's sentences and placing him on supervised probation for four years. Additionally, the trial court imposed fines amounting to $1,500 and ordered restitution amounting to $4,500. The trial court further ordered the appellant to pay the fines, restitution, and court costs in installments of $200 per month.

In imposing the appellant's sentences, the trial court noted its consideration of the pre-sentence report, the testimony adduced at the sentencing hearing, sentencing principles, and any enhancement and mitigating factors. The trial court specifically noted its application of the enhancement factor set forth in Tenn. Code Ann. § 40-35-114(15) (1997), that the appellant abused a position of private trust. In mitigation, the trial court noted that the appellant's criminal conduct

-4-

neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1) (1997). The court refused, however, to consider the appellant's youth, Tenn. Code Ann. § 40-35-113(6), and indicated that it was not convinced that the appellant had assisted authorities in investigating these offenses, Tenn. Code Ann. § 40-35-113(9) & (10). Finally, the trial court observed that it was "most distressed" by the appellant's failure to accept responsibility for his criminal conduct. In this regard, the trial court noted the appellant's failure to attempt restitution prior to the sentencing hearing and found that the appellant had lied to the court concerning his income in order to minimize his legal expenses. The court concluded that the appellant had "ripped off th[e] court" in addition to ComData Corporation.

## II. Analysis

The sole issue before this court is whether the trial court should have selected alternative sentences more favorable than split confinement from the options set forth in Tenn. Code Ann. § 40-35-104 (1997). This court reviews the manner of service of sentences de novo. Tenn. Code. Ann. § 40-35-401(d) (1997). In conducting our de novo review, we consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § § 40-35-102, -103 (1997), -210 (1998); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991).

Ultimately, the burden is upon the appellant to demonstrate the impropriety of his sentences. State v. Grigsby, 957 S.W.2d 541, 544 (Tenn. Crim. App. 1997); State v. Loden, 920 S.W.2d 261, 266 (Tenn. Crim. App. 1995). Moreover, this court will accord the trial court's determinations a presumption of correctness if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances. Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169. Accordingly,

> the [Tennessee Criminal] Sentencing Reform Act of 1989 requires the trial judge to place in the record, either orally or in writing, [applicable] enhancement and mitigating factors, or the absence of such factors, along with specific findings of fact upon which the principles of sentencing are based.

State v. Dies, 829 S.W.2d 706, 710 (Tenn. Crim. App. 1991); see also Tenn. Code Ann. § 40-35-209(c) (1997); Tenn. Code Ann. § 40-35-210(f).

In this case, we note that the trial court failed to separate its findings relating to the issue of alternative sentencing from its findings relating to the length of the appellant's sentences. Yet, in State v. Virginia Ailene Gann, No. 01C01-9704-CC-00164, 1998 WL 265495, at **6 & 9 (Tenn. Crim. App. at Nashville, May 27, 1998), this court applied the presumption of correctness notwithstanding the trial court's failure to "formally designate certain of its findings as applicable to the issue of alternative sentencing." In any case, the trial court also failed to consider one applicable enhancement factor and failed to grant some, albeit minimal, weight to two applicable

mitigating factors. This court will not defer to a trial court's sentencing determinations if the trial court failed to give "due consideration and proper weight to the factors . . . which are relevant to sentencing under the Act." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991); see also State v. Russell E. Mills, No. M1999-2505-CCA-R3-CD, 2000 WL 1336685, at *3 (Tenn. Crim. App. at Nashville, September 15, 2000); State v. Raymond Paul Duncan, No. 03C01-9706-CR-00208, 2000 WL 31842, at *7 (Tenn. Crim. App. at Knoxville, January 12, 2000), perm. to appeal denied, (Tenn. 2000).[5]

Keeping in mind, then, the absence of any presumption of correctness, we turn to the appellant's contention that he was a suitable candidate for either total probation or placement in a community corrections program. With respect to the trial court's denial of total probation, we note the appellant's apparent misapprehension that he was "presumptively entitled" to total probation. The appellant was *eligible* for probation. Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, the appellant was entitled to a presumption of alternative sentencing under Tenn. Code Ann. § 40-35-102(6). Accordingly, the trial court granted the appellant an alternative sentence of split confinement. However, "the determination of whether Appellant is entitled to an alternative sentence and whether Appellant is entitled to full probation are different inquiries, requiring different burdens of proof." State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997); see also State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Thus, the appellant bore the burden of demonstrating to the trial court that total probation, rather than split confinement, would "'subserve the ends of justice and the best interest of both the public and the defendant.'" Bingham, 910 S.W.2d at 456.

In determining whether the appellant satisfied his burden, the trial court could consider the following factors: the nature and circumstances of the criminal conduct, Tenn. Code Ann. § 40-35-210(b)(4); the defendant's potential or lack of potential for rehabilitation, Tenn. Code Ann. § 40-35-103(5); whether a sentence of total probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and whether a sentence other than total probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). Grissom, 956 S.W.2d at 520; Bingham, 910 S.W.2d at 456. A defendant's potential or lack of potential for rehabilitation may, in turn, be demonstrated by circumstances such as his criminal record, his social history and present condition, and his candor before the court. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Moreover, a defendant's willingness to accept responsibility for his crime is a circumstance germane to his rehabilitation potential. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996).

With respect to the nature and circumstances of the criminal conduct, the trial court found that the appellant had abused a position of private trust. Tenn. Code Ann. § 40-35-114(15).

---

[5] But see State v. Clayton Eugene Turner, No. 03C01-9805-CR-00176, 1999 WL 817690, at *16 (Tenn. Crim. App. at Knoxville, October 6, 1999), perm. to appeal denied, (Tenn. 2000); State v. Thomas Ware, No. 02C01-9508-CR-00228, 1997 WL 30346, at *6 n. 2 (Tenn. Crim. App. at Jackson, January 28, 1997).

In State v. Gutierrez, 5 S.W.3d 641, 646 (Tenn. 1999)(citation omitted), our supreme court provided guidance to lower courts in evaluating the applicability of this enhancement factor:

> [T]o determine the application of the private trust factor, the court must look to "the nature of the relationship [between the parties]," and whether that relationship "promoted confidence, reliability, or faith." A relationship which promotes confidence, reliability, or faith, usually includes a degree of vulnerability. It is the exploitation of this vulnerability to achieve criminal purposes which is deemed more blameworthy and thus justifies application of the enhancement factor.

Clearly, the appellant exploited the confidence, reliance, or faith of his employer in order to afford his accomplices access to customers' expense accounts. See, e.g., Grissom, 956 S.W.2d at 518; State v. Marsha L. McClellan, No. E2000-02373-CCA-R3-CD, 2001 WL 394849, at *6 (Tenn. Crim. App. at Knoxville, April 19, 2001). Moreover, we have previously observed that "employees who commit crimes upon third parties in the course of their employment may very well abuse a private trust." State v. Ricky Woodard, No. 01C01-9802-CC-00056, 1999 WL 38491, at *5 (Tenn. Crim. App. at Nashville, January 29, 1999). In other words, as an employee of ComData, the appellant also abused the trust of its customers in order to accomplish his offenses. Id.

Nevertheless, the appellant cites State v. Bilbrey, 816 S.W.2d 71 (Tenn. Crim. App. 1991), in support of the proposition that this factor constitutes an element of the appellant's offenses. See Bingham, 910 S.W.2d at 456 ("In arriving at the appropriate sentence, the sentencing court may not consider any factor which constitutes an element of the offense."). In Bilbrey, this court was assessing the appellant's sentence for the former crime of fraudulent breach of trust. 816 S.W.2d at 73. The crime of fraudulent breach of trust required

> [t]he fraudulent appropriation of personal property or money by anyone to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, factor, or bailee, or on any other contract or trust by which he was bound to deliver or return the thing received or its proceeds.

Tenn. Code Ann. § 39-3-904 (1982). Once again, the indictment in the appellant's case charged him with causing a computer system to be accessed for the purpose of obtaining $1,000 or more for himself or another by means of false or fraudulent pretenses, representations, or promises. Tenn. Code Ann. § 39-14-602(a)(1) (1997). Unlike the former offense of fraudulent breach of trust, the charged offenses in this case did not necessarily entail the exploitation of a relationship which promoted confidence, reliability, or faith and any consequent vulnerability. Cf. Grissom, 956 S.W.2d at 518 n.5 (declining to find that abuse of a position of private trust is inherent in the present-day offense of theft).

That having been said, we acknowledge our holding in State v. Larry McKinney, No. 01C01-9307-CR-00234, 1995 WL 108257, at *2 (Tenn. Crim. App. at Nashville, March 10, 1995)(per curiam), that the indictment for theft in that case,

> by alleging the theft was through fraud and deceit, implies that a relationship had been established between the parties and that the theft was accomplished by way of a breach of trust, i.e. deceit, in the relationship. Therefore, that factor which allows for a breach of trust to be used to enhance a sentence is inapplicable to the facts of this case as it is an element of the offense charged.

Unpublished opinions are considered persuasive authority. Tenn. Sup. Ct. Rule 4(H)(1). Nevertheless, we take this opportunity to question our reasoning in McKinney. A person may practice fraud and deceit upon someone or some entity with whom he shares little or no relationship, albeit the lack of a relationship will reduce the likelihood of success. Moreover, we note that, in the instant case, the "false or fraudulent pretenses, representations, or promises" inherent in the appellant's offenses were made by the appellant's accomplice or accomplices and were in addition to the appellant's abuse of the trust of his employer and his employer's customers.

As noted by the State, the evidence adduced at the sentencing hearing also established that the appellant was a leader in the commission of an offense involving two or more criminal actors. Tenn. Code Ann. § 40-35-114(2). Moreover, we are not bound to ignore the appellant's confession at the sentencing hearing that he not only provided his accomplice the two computer codes authorizing the disbursement of $4,500 from expense accounts maintained by ComData, for which conduct he pled guilty in this case, but was also the source of other security information that his accomplice utilized in obtaining additional funds. As noted earlier, the appellant testified that he received a portion of these additional funds. Cf. Zeolia, 928 S.W.2d at 462; State v. Shannon Corley, No. E2000-00382-CCA-R3-CD, 2000 WL 1285250, at **2-3 (Tenn. Crim. App. at Knoxville, September 12, 2000).

We further note that, in the face of the above confession, the appellant firmly disclaimed responsibility for the loss of any funds other than the $4,500 encompassed by his guilty pleas. This disclaimer does not redound to the appellant's benefit but, instead, reflects poorly upon his potential for rehabilitation.

Nevertheless, we agree with the appellant that, in addition to Tenn. Code Ann. § 40-35-113(1), the trial court should have considered the mitigating factors that the appellant assisted the authorities in detecting or apprehending accomplices and assisted the authorities in locating or recovering property involved in the crime. Tenn. Code Ann. § 40-35-113(9) & (10). As a reflection of the appellant's potential for rehabilitation, however, these factors are entitled to little weight due to the appellant's casual approach to scheduling and attending meetings with investigators and his subsequent retraction of information that he provided to investigators.

Finally, in denying the appellant total probation, the trial court observed that the appellant's lack of candor with the court concerning his income and the appellant's failure to attempt restitution prior to the sentencing hearing suggest an unwillingness to accept responsibility for his offenses. With respect to the appellant's lack of candor, the record before this court preponderates in favor of the trial court's finding. State v. Parker, 932 S.W.2d 945, 956 (Tenn. Crim. App. 1996);

State v. Jackie R. Ellis, No. 01C01-9804-CC-00177, 1999 WL 219599, at *3 (Tenn. Crim. App. at Nashville, April 16, 1999). Again, the appellant provided three different accounts of his income at Cigna Medicare: (1) $1,300 per month on the affidavit of indigency; (2) $1,900 per month to the investigating officer who prepared the pre-sentence report; and (3) $1,600 per month to the court during his sentencing hearing.[6] We agree with the trial court that the appellant's apparent attempt to avoid the consequences of his offenses by minimizing his legal expenses does not bode well for his chances of successful rehabilitation absent some period of confinement. Moreover, we note our previous observation in State v. Tommy Dwayne Naillon, No. 03C01-9403-CR-00109, 1994 WL 695168, at *2 (Tenn. Crim. App. at Knoxville, December 13, 1994), that, generally speaking,

> [a]s a reflection of a defendant's rehabilitative potential, the defendant's candor towards the court is particularly relevant, under the guidance of Tenn. Code Ann. § 40-35-103(5), to the sentencing court's choice of a sentencing alternative under our sentencing act.

Indeed, a defendant's lack of candor may alone constitute a sufficient basis for denying total probation. State v. Bunch, 646 S.W.2d 158, 160-161 (Tenn. 1983); State v. Dowdy, 894 S.W.2d 301, 305-306 (Tenn. Crim. App. 1994); State v. Stanley O. Abell, No. 02C01-9805-CR-00129, 1999 WL 336259, at *6 (Tenn. Crim. App. at Jackson, May 27, 1999), perm. to appeal denied, (Tenn. 1999).

As to the appellant's failure to attempt payment of restitution prior to the sentencing hearing, we acknowledge that a defendant's *inability* to pay restitution cannot form the basis for the denial of an alternative sentence. State v. Millsaps, 920 S.W.2d 267, 272 (Tenn. Crim. App. 1995). However, we previously considered a defendant's *unwillingness* to pay restitution a reflection of her unwillingness to accept responsibility for her crime and, therefore, a valid basis for the denial of total probation. State v. Wanda Walters, No. 88-174-III, 1989 WL 25792, at *2 (Tenn. Crim. App. at Nashville, March 23, 1989); see also State v. John William McCoy, No. 9, 1991 WL 35749, at *5 (Tenn. Crim. App. at Jackson, March 20, 1991). In this case, the appellant was steadily employed during the year preceding the sentencing hearing. Nevertheless, the appellant failed to either offer restitution to ComData or save money in anticipation of paying restitution. Of course, the pre-sentence report does not clearly reflect the appellant's monthly expenses during the year preceding the hearing. However, the appellant himself asserted to the officer who prepared the pre-sentence report that, at his current salary of $2,500 per month, he could pay $100 each month toward restitution and court costs. At the time of the sentencing hearing, the appellant had been receiving a salary of $2,500 per month for four months. Yet, the appellant's bank account contained only $222. Moreover, although the appellant claims that his financial resources limit his payment of restitution to $100 per month, those resources apparently pose no obstacle to his re-enrollment in school or the establishment of his own business.[7]

---

[6]The pre-sentence report indicates that the investigating officer confirmed the accuracy of the employment information contained in the report.

[7]Subsequently, at the hearing on the appellant's "Motion for New Trial," defense counsel indicated that the appellant was prepared on that day to pay $1,000 in restitution. Yet, during oral argument before this court, counsel

(continued...)

In sum, we conclude that the circumstances of the appellant's offenses and his current lack of potential for rehabilitation justify the imposition of split confinement in lieu of total probation. As to the appellant's claim that the trial court should have sentenced him pursuant to the Tennessee Community Corrections Act of 1985, we initially note that, on appeal, the appellant requests placement in a community corrections program only if unaccompanied by any period of confinement. We also note that, in the trial court, the appellant never requested placement in a community corrections program. Of course, this court has indicated that a trial court may, in its discretion, place a defendant in a community corrections program regardless of any oral or written request by the defendant for "such a form of sentencing." State v. Timothy Mark Redd, No. 01C01-9608-CC-00342, 1997 WL 722786, at *6 (Tenn. Crim. App. at Nashville, November 20, 1997)(citing State v. Estep, 854 S.W.2d 124, 127 (Tenn. Crim. App. 1992)); cf., e.g., State v. Willie B. Jones, No. 92, 1990 WL 73742, at **1-2 (Tenn. Crim. App. at Jackson, June 6, 1990). In any event, even assuming that the appellant meets the minimum eligibility requirements for community corrections, Tenn. Code Ann. § 40-36-106 (1998), he is not automatically entitled to sentencing under the Act. State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App.1990). As we observed in Grigsby, 957 S.W.2d at 547,

> [t]he Community Corrections Act was never intended as a vehicle through which offenders could escape incarceration. Rather, the legislature's intent was to address prison overcrowding by providing certain non-violent offenders a means by which they could be rehabilitated while continuing to support their families and contributing to society. Moreover, when imposing community corrections sentences, courts must remain mindful of the limited positions for placement within local programs . . . . Accordingly, the appellant's rehabilitative potential is central in the selection process.

Cf. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999), perm. to appeal denied, (Tenn. 2000). For reasons articulated above, we cannot conclude that the trial court erred in declining to consider the appellant's placement in a community corrections program in lieu of split confinement. Indeed, the record reflects that the appellant will derive considerable benefit from a period of "shock incarceration." Tenn. Code Ann. § 40-35-306 (1997), Sentencing Commission Comments.

Having concluded that the imposition of split confinement is appropriate in this case, we note pursuant to our de novo review that the trial court ordered the appellant's eligibility for release following service of seventy-five percent of his one-year term of confinement or nine months. We also note that the trial court possessed no authority under the 1989 Sentencing Act to impose this release eligibility percentage. But see State v. Roger M. DeMass, No. M2000-0344-CCA-R3-CD, 2000 WL 1277359, *4 (Tenn. Crim. App. at Nashville, August 31, 2000), perm. to appeal denied, (Tenn. 2001).

Tenn. Code Ann. § 40-35-314(b) (1997) (emphasis) provides:

---

[7](...continued)
conceded that the appellant had not yet paid any restitution.

-10-

(1) When imposing [a] sentence [pursuant to Tenn. Code Ann. § 40-35-306] to the local jail or workhouse, the defendant is eligible for release classification status *as provided in this chapter*. However, the court may specify an earlier percentage of eligibility for all programs except parole. This percentage shall be expressed in one (1) of the following numeric percentages: zero percent (0%), ten percent (10%), twenty percent (20%), thirty percent (30%), forty percent (40%) or fifty percent (50%); provided, that the percentage shall be no higher than the release eligibility percentage under [Tenn. Code Ann.] § 40-35-501.

(2) In the event the judgment does not specify a percentage as provided in subdivision (b)(1), the defendant shall be eligible for such programs, except parole, six (6) months prior to release eligibility date under § 40-35-501.

Tenn. Code Ann. § 40-35-501 (2000 Supp.) is the only other statutory provision in Chapter 35, Title 40 of the Tennessee Code, other than the provision relating to misdemeanor sentencing, that addresses a defendant's eligibility for release classification. As relevant to the instant case, Tenn. Code Ann. § 40-35-501(c) provides that "[r]elease eligibility for each defendant sentenced as a Range I standard offender shall occur after service of thirty percent (30%) of the actual sentence imposed less sentence credits earned and retained by the defendant." Therefore, the appellant's eligibility for release in this case occurs after service of thirty percent of three years or 10.8 months. The trial court could have imposed a lesser eligibility percentage for programs other than parole, but the trial court was required to express the percentage as zero percent, ten percent, or twenty percent of the actual sentence imposed. Tenn. Code Ann. § 40-35-314(b); Tenn. Code Ann. § 40-35-501(c).

We also note that the trial court apparently imposed fines in this case for the purpose of requiring the appellant to reimburse the State for his legal representation. This court has the authority to review fines as a part of any sentence. State v. Bryant, 805 S.W.2d 762, 766-767 (Tenn. 1991); see also State v. Robert Wilkes, No. 01C01-9708-CC-00382, 1999 WL 500010, at *12 (Tenn. Crim. App. at Nashville, July 15, 1999), perm. to appeal denied, (Tenn. 2000). Correspondingly, "[t]he trial court's imposition of a fine, if any, is to be based upon the factors and principles of the 1989 Sentencing Act, such as, prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors, that are relevant to an appropriate, total sentence." State v. Blevins, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997); see also State v. Treva Dianne Green, No. E1999-02204-CCA-R3-CD, 2000 WL 1839130, at *15 (Tenn. Crim. App. at Knoxville, December 14, 2000); Wilkes, No. 01C01-9708-CC-00382, 1999 WL 500010, at *12. We do not believe that "the factors and principles of the 1989 Sentencing Act" authorize the trial court to impose fines upon the appellant purely for the purpose of effectuating the repayment of any debt that is owed by the appellant to the State due to his misrepresentations concerning his income. Moreover, we note that Tenn. Code Ann. § 8-14-205(d)(1) (2000 Supp.) delineates a trial court's authority to order a defendant's monetary contribution to his representation by the district public defender. This

statutory provision permits the court to order such contribution as a condition of discharge from probation.  Id.  However,

> [s]uch sum as ordered by the court *shall be paid by the accused independently and separately from any fines and costs associated with the cause*, and such moneys paid by the accused and collected by the clerk of the court pursuant to this section shall be collected independently and separately from any fines and costs associated with the cause and be applied directly to the sum ordered by the court to be paid under this section.

Id. (emphasis added).

### III.  Conclusion

For the foregoing reasons, we affirm in part the judgment of the trial court but reverse the trial court's order that the appellant be eligible for release following service of seventy-five percent of his one-year term of confinement and further reverse the trial court's imposition of fines amounting to $1,500.  Upon remand, the trial court may, in its discretion, (1) impose a percentage of eligibility for programs other than parole in accordance with Tenn. Code Ann. § 40-35-314 (b)(1); and (2) impose fines in accordance with the "the factors and principles of the 1989 Sentencing Act."

_____
NORMA McGEE OGLE, JUDGE